April M. Linscott, ISB #7036
OWENS, McCREA, & LINSCOTT, PLLC
8596 N. Wayne Dr., Ste. A
Hayden, Idaho 83835
Phone: (208) 762-0203
Fax: (208) 762-0303
Email: alinscott@omllaw.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KELLI THORNTON, CAROLINE GRIMES, and TINA LEE,<br><br>                        Plaintiffs,<br><br>    vs.<br><br>PERFECTION TRAFFIC CONTROL, LLC, an Idaho limited liability company; PATRICK and MISTI BORGEN, husband and wife; and RICHARD FORREST II, an individual<br><br>                        Defendants. | Case No. 2:19-cv-490<br><br>**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL** |

COME NOW Plaintiffs, KELLI THORNTON, CAROLINE GRIMES, and TINA LEE, by and through their counsel or record, April M. Linscott of Owens, McCrea & Linscott, PLLC, and for a cause of action, complain and allege as follows:

**I.
JURISDICTION, VENUE, AND THE PARTIES**

1.      This action arises under Title VII of the Civil Rights Act of 1964, as amended and codified at 42 U.S.C. § 2000e, *et seq*. ("Title VII"), the Idaho Human Rights Act ("IHRA"), and state law.

2. This Court has original jurisdiction under the provisions of 28 U.S.C. § 1331, with respect to claims arising under federal law. This Court shares supplemental jurisdiction with the Courts of the State of Idaho, in matters arising under the state law, including IHRA, Idaho Code § 67-5901, *et seq*. This Court's jurisdiction over Plaintiffs' state law claims is founded upon 28 U.S.C. § 1367.

3. Venue is proper pursuant to Title 28 of the United States Code, Section 1391.

4. Plaintiff, Kelli Thornton, at all times relevant to this action, resided in Kootenai County, within the District of Idaho.

5. Plaintiff, Caroline Grimes, at all times relevant to this action, resided in Kootenai County, within the District of Idaho.

6. Plaintiff, Tina Lee, at all times relevant to this action, resided in Spokane, Washington.

7. A substantial part, if not all, of the events or omissions giving rise to this Complaint occurred within the District of Idaho.

8. Defendant, Perfection Traffic Control, LLC ("Perfection") is an Idaho limited liability company.

9. Defendants, Patrick and Misti Borgen are husband and wife, and, at all times relevant to this action, were managers of Perfection.

10. Defendant, Richard Forrest II, at all times relevant to this action, was an employee of Perfection.

11. Plaintiffs' claims are sufficient to meet the jurisdictional requirements necessary to file a civil complaint in the United States District Court, for the District of Idaho.

## II.
## BACKGROUND AND FACTUAL ALLEGATIONS

12. This is primarily a sexual harassment/hostile work environment case which arises out of the construction industry. It is well documented that sexual harassment is particularly prevalent in the construction industry. The U.S. Department of Labor submitted a study in 1999 that addressed sexual harassment in the construction industry and specifically addressed sexual harassment of flaggers. *See*, https://www.osha.gov/doc/accsh/haswicformal.html.

The study stated, in pertinent part, as follows:

Sexual harassment of female traffic controllers at a road construction site was the subject of a 1988 Appeals Court decision in which the court ruled in favor of the female plaintiffs. Darla Hall, Patty Baxter, and Jeannette Ticknor were hired as "flag persons." Immediately after the women started work, male members of the construction crew began to inflict verbal sexual abuse on the women, referring to the women with obscene adjectives. They nicknamed Ms. Ticknor "Herpes" after she developed a skin reaction due to a sun allergy. On one occasion, Ms. Baxter returned to her car and found vulgar anatomical names written in dust on the sides of her car. Male crew members repeatedly used crude obscene requests to ask Ms. Hall if she wanted to have sex, and they requested that Ms. Hall and Ms. Baxter engage in oral sex with them.

In addition to the verbal abuse, male co-workers subjected Ms. Hall and Ms. Baxter to offensive, unwelcome physical touching. All three women also experienced other types of abuse at work. The women were "mooned;" a crew member exposed himself; obscene pictures were flashed at the women; and co-workers urinated in one woman's water bottle and another's gas tank.

The study also cited the following alarming statistics:

- 88% of women respondents to one study reported sexual harassment.
- 41% of women construction workers suffered from gender harassment in another study.
- According to a 1996 USA Today analysis of U.S. Equal Employment Opportunity Commission and Bureau of Labor Statistic data, female construction workers had the second highest rate of sexual harassment complaints per 100,000 employed women.
- Tradeswomen reported the following forms of sexual harassment: 88% had been confronted with pictures of naked or partially dressed women; 83% experienced unwelcome sexual remarks; and 57% reported being touched or asked for sex.

13. A widely publicized report published by the EEOC in 2016 found that approximately 70% of individuals who experienced harassment never reported it at work. *Report of the Co-Chairs of the EEOC Select Task Force on The Study of Harassment in the Workplace*, https://www.eeoc.gov/eeoc/task_force/harrassment/upload/report.pdf. The Task Force also found under-reporting was due to fear, humiliation, ostracism, damage to reputation, damage to career, retaliation, inaction, blame and disbelief. *See*,

https://www.eeoc.gov/eeoc/task_force/harassment/upload/rebooting_harassment_prevention.pdf.

14. The task force further found that fears of retaliation were well-founded. One study considered found that 75% of employees who spoke out against workplace mistreatment faced some form of retaliation. *Id*. Other studies found that sexual harassment reporting is often followed by: organizational indifference; trivialization of the harassment complaint; and hostility and reprisals against the victims. *Id*. One professor providing testimony to the task force, Lilia Cortina, University of Michigan, stated, "The most reasonable response to harassment in many organizations is not to report it, not to file a complaint, not even to speak to management about the problem." *Id*.

15. At all times material hereto, Defendant Perfection is an employer within the meaning of the IHRA and Title VII. Further, Perfection offers traffic control services to protect various construction projects, where traffic control is necessary, in order to complete the construction project safely. As part of its business, Perfection employs flaggers and traffic control supervisors.

16. At all times material hereto, Plaintiffs were employed by Perfection as either flaggers or traffic control supervisors. At all times material hereto, Plaintiffs performed their job duties in a competent and professional manner, obeyed all rules and regulations set forth by

Perfection, and consistently met or exceeded standards on performance reviews and were considered good employees. As women, Plaintiffs are a member of a constitutionally protected class.

17. Patrick Borgen, manager of Perfection, stated that he recognized that with a mobile service provider such as Perfection there is no way for him to know what is going on in the field. He recognized that employees could not be watched 24/7.

18. Despite the Plaintiffs' isolation in the field, with no one watching them, Perfection hired Defendant Richard Forrest. Defendant Forrest was the brother of Ricki Lanham. Ms. Lanham was, at the time of Defendant Forrest's hire, and continues to be, the second in command at Perfection. Ms. Lanham holds the title of Field Safety Coordinator.

19. Perfection either knew or should have known that Richard Forrest had been released from prison where he had been serving a 292-month sentence. Mr. Forrest's sentence was highly publicized in Spokane, Washington as part of what was described as the biggest meth ring ever busted in the area. Mr. Forrest plead guilty to three offenses related to possession with intent to distribute cocaine and methamphetamine. Mr. Forrest's original sentence included enhancements for possessing a firearm, for obstruction of justice, and for being a leader/organizer. Further, there was no reduction in time for acceptance of responsibility. In the criminal proceedings, Mr. Forrest was recognized as being violent, in that he tortured at least one individual, to include the following behavior:

> "[t]he CW had a knife held to his throat and had his head shaved. A dog collar was placed on him and he was blind-folded. He was thrown onto a mattress face down, his pants pulled down, and he was beaten on his backside with a 2x4. His face was then spray-painted. He was then tied to a pole with feet and hands bound. A pillow case was placed over his head and his testicles were burned while he continued to be beaten"

*Ct. File, U.S. Dist. Ct., Dist. of Eastern Wash., Case No. 97-CR-27-RHW.*

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL - 5

20. At all times material herein, Perfection did not have any sexual harassment, retaliation, or hostile workplace policies. Further, Perfection did not have any policies or procedures in place to protect its female employees who worked in isolation in the field. Perfection failed to inform Plaintiffs or otherwise take measures to insure Plaintiffs' health and safety while they worked with Defendant Forrest. Instead, Perfection allowed a culture of hostility and fear, which culture was created by Defendant Forrest and his sister.

21. Defendant Forrest worked with each of the Plaintiffs in isolation. During the times that he worked with the women, he committed harassing acts that were similar to the acts described in the above-referenced publicly, published Department of Labor study, and, which acts were not prevented by Perfection. Defendant Forrest repeatedly performed the following illegal acts:

- Requested oral sex.
- Took photographs of his penis and sent the photographs to the Plaintiffs.
- Took full body naked photographs of himself and sent the photographs to the Plaintiffs.
- Requested sex.
- Was aggressive and threatened physical harm if they did not comply or if they complained.
- Exposed himself to Plaintiffs.
- Gave unwanted hugs and kisses.
- Forced at least one of the Plaintiffs to grab his penis when he opened his pants.
- Described wanting to kiss/lick the Plaintiffs from head to toe.

22. The Plaintiffs were subjected to the illegal sexual harassment for more than a year. Each Plaintiff thought she was the only woman that Defendant Forrest was harassing. At the time of the initial harassment, the Plaintiffs did not come forward with their complaints for the exact reasons cited in the previously mentioned EEOC Task Force Report. They were afraid. Each Plaintiff was afraid to come forward with a complaint because they received threats of physical violence from Forrest. Forrest's sister was their supervisor, and the Plaintiffs were also afraid of retaliation by her. They were humiliated. They feared damage to their career, damage to their reputation, and retaliation.

23. In February of 2018, each of the women were scheduled to work on the same job out-of-town in Western Washington for an emergency storm. Defendant Forrest was scheduled to work at the same job. All of Perfection's employees working the emergency storm stayed at the same hotel. Ms. Grimes and Ms. Thornton heard Defendant Forrest screaming at Ms. Lee in the hotel. They were concerned for Ms. Lee's safety, so they knocked on Ms. Lee's door. They found Ms. Lee in the room extremely upset and with tears in her eyes. Ms. Lee informed Ms. Grimes and Ms. Thornton that Defendant Forrest was treating her poorly because she declined to have sex with him. The women learned that night they were not alone in the harassment they experienced. They each had been repeatedly sexually harassed in a similar fashion by Defendant Forrest.

24. When Ms. Lee returned from the Western Washington area, she reported Defendant Forrest's illegal behavior to Perfection. Perfection took separate complaints from Ms. Lee, Ms. Grimes, and Ms. Thornton.

25. After making their complaints of sexual harassment, Plaintiffs learned that their fears which prevented them from making complaints the year prior were not unfounded. After receiving Ms. Lee's complaint, Perfection took no steps to protect the Plaintiffs from Defendant Forrest. Ms. Lee was surprised and frightened, to the point of physically vomiting, when she ran into Forrest at work, while she was alone, shortly thereafter. The Plaintiffs asked not to be scheduled to work with Defendant Forrest. Their request was denied.

26. After receiving the Plaintiffs' complaints about Defendant Forrest, Perfection alleged that it conducted an investigation into the matter, which took approximately three weeks. During that time, Plaintiffs were threatened and intimidated by Defendant Forrest. Further, Plaintiffs were rarely scheduled to work, even though they were always available and willing to work. Meanwhile, Defendant Forrest continued to be scheduled to work.

27. After the alleged investigation, all three women were called into Perfection's office for a meeting. During that meeting, Patrick Borgen stated the Perfection was trying to go about this the right way, but that he [Mr. Borgen] was not going to crucify a male again at this company. He said, "we've already done it twice, it's not happening again." The Plaintiffs had also been made aware that complaints regarding Defendant Forrest had previously been made by other women.

28. Mr. Borgen confirmed that Mr. Forrest admitted to sending naked photos of himself to the women. Mr. Forrest said he flirted with all of them. However, Mr. Forrest also implied that the women liked it. He accused the women of flirting back and sending photos to him. The women adamantly denied flirting back or sending photos to Mr. Forrest. In the meeting, Mr. Borgen specifically accused Ms. Lee of being a liar. He implied that Ms. Grimes and Ms. Thornton were liars because they waited a year before coming forward. And, in the face of Mr. Forrest's uncontested admission of sexual harassment, Mr. Borgen stated that the women's complaints were unsubstantiated. The Plaintiffs were then told that Perfection needed to know by the end of the day whether they wanted to continue to work at Perfection with Mr. Forrest or whether they were going to quit. Mr. Borgen stated that he was certain that Mr. Forrest would not harm because he believed Mr. Forrest was sorry. Mr. Borgen also stated that Defendant Misti Borgen was involved in, and aware of, the alleged investigatory process and its outcome, and was in agreement with Mr. Borgen.

29. The Plaintiffs understood that if they chose to stay at Perfection they would continue to work in isolation, they would continue to be scheduled to work with Mr. Forrest, and no additional measures would be taken to assure their safety.

30. The Plaintiffs were constructively discharged from their positions. Having no choice, they decided to part ways with Perfection and Defendant Forrest.

31. The Plaintiffs timely initiated an administrative proceeding for all allegations contained herein with the Idaho Commission on Human Rights and the Equal Employment Opportunity Commission.

32. On June 17, 2019, The EEOC issued its determination that there is reasonable cause to believe that the Plaintiffs, and a class of women, were subjected to sexual harassment and retaliation by Perfection, and that Plaintiffs were constructively discharged because of the sexual harassment and retaliation, in violation of Title VII of the Civil Rights Act of 1964, as amended.

33. Ultimately, the EEOC issued its Notice of Conciliation Failure and gave Plaintiffs a Notice of Right to Sue. Plaintiffs have exhausted their administrative remedies.

## III.
## HOSTILE WORK ENVIRONMENT, RETALIATION, GENDER DISCRIMINATION, DISPARATE TREATMENT AND CONSTRUCTIVE DISCHARGE IN VIOLATION OF TITLE VII AND THE IHRA

34. Plaintiffs re-allege paragraphs 1 through 33 as if fully set forth herein.

35. Perfection, and its managers, knew or should have known that Defendant Forrest was imprisoned for nearly 20 years and committed violent physical acts of a sexual nature. Perfection, and its managers, were aware of, or should have known of, Plaintiffs' and other's allegations that Forrest repeatedly sexually harassed female employees. Despite this, Perfection failed to take adequate remedial measures to prevent his on-going sexual harassment within the workplace.

36. The Plaintiffs were subjected to a hostile environment, in that they were repeatedly, over the course of a year, subjected to unwanted sexual advances, requests for sexual favors, and subjected to other unwanted verbal and physical conduct of a sexual nature.

37. Defendant Forrest's conduct was sufficiently severe or pervasive that it altered the conditions of the Plaintiffs' employment and created an abusive working environment.

38. After Perfection, and its managers, were made aware of Plaintiffs' complaints, they made it clear that Perfection was interested in protecting Defendant Forrest and keeping him from returning to prison, over protecting the Plaintiffs' physical safety and emotional wellbeing.

39. After Plaintiffs lodged their complaints, they were retaliated against in that their employment hours were reduced.

40. After Plaintiffs lodged their complaints, they were retaliated against in that they were threatened.

41. After Plaintiffs lodged their complaints, Defendant Forrest's employment hours were not cut during the pendency of the investigation, the same as the Plaintiffs' were.

42. Perfection, and its managers, discriminated against Plaintiffs on the basis of gender, and treated them differently than a male employee.

43. Perfection's actions created a hostile environment in which Plaintiffs could not perform their jobs and feared for their own safety. Perfection's actions ultimately lead to Plaintiffs' constructive discharge on March 19, 2018.

## IV.
## NEGLIGENCE

44. Plaintiffs re-allege paragraphs 1 through 43 as if fully set forth herein.

45. Perfection had a statutory duty, pursuant to Idaho Code § 67-5901, *et seq.*, to prevent or correct discrimination against Plaintiffs based on their gender.

46. Perfection had a duty of ordinary care to protect its employees.

47. Perfection knew or should have known of its discriminatory conduct.

48. Perfection breached its statutory duty and duty of ordinary care.

49. Perfection's actions, which were in violation of both federal and state law, proximately caused Plaintiffs' injuries, in an amount to be proven at trial, in the form of back pay, front pay, emotional distress, loss of employment benefit package attendant to their position of employment, attorney's fees and costs, loss of usual activities, and loss of reputation.

## V.
## NEGLIGENT HIRING, TRAINING, AND SUPERVISION

50. Plaintiffs re-allege paragraphs 1 through 49 as if fully set forth herein.

51. Prior to hiring Defendant Forrest, Perfection, and its managers, knew or should have known of Forrest's violent and sexually harassing nature.  Further, Perfection, and its managers, either knew or should have known of other complaints that Forrest sexually harassed and/or engaged in threatening behavior towards women.

52. Despite this knowledge, Perfection hired, retained and failed to adequately discipline Defendant Forrest, and protect the health and safety of its women employees.

53. As a direct and proximate cause of Perfections' negligence, Plaintiffs were sexually and physically assaulted by Defendant Forrest and damaged in an amount to be proven at trial.

## VI.
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

54. Plaintiffs re-allege paragraphs 1 through 53 as if fully set forth herein.

55. Defendants' treatment of Plaintiffs was intentional and/or reckless.

56. Defendants' treatment of Plaintiffs was extreme, outrageous and unreasonable, such that an unsafe environment was created and sustained.

57. Defendants' extreme and outrageous conduct proximately caused Plaintiffs to suffer emotional harm.

58. Plaintiffs' emotional harm was severe in that they suffered severe emotional distress, mental anguish, indignation, wounded pride, shame, and despair. Plaintiffs' damages are in excess of the minimum jurisdictional limits of the District Court. Plaintiffs have suffered damages in the form of back pay, front pay, emotional distress, loss of employment benefit package attendant to their position of employment, attorney's fees and costs, loss of usual activities, and loss of reputation.

59. As a result of the Defendants' actions and/or inactions, Plaintiffs suffered from mental anguish, loss of sleep, loss of appetite, headaches, and a loss of companionship, society and comfort, in an amount to be proven at trial, but which exceeds the minimum jurisdiction limits of the District Court.

## VII.
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

60. Plaintiffs re-allege paragraphs 1 through 59 as if fully set forth herein.

61. Defendants had a duty to exercise ordinary care in their dealings with Plaintiffs.

62. Defendants had a duty to fulfill their statutory obligations under Title VII, IHRA and state law.

63. Defendants breached their duty to Plaintiffs.

64. Defendants' breach of their duty caused Plaintiffs emotional distress, including but not limited to, stress, anxiety, sleeplessness and depression. Plaintiffs have been damaged in excess of the minimum jurisdictional limits of the District Court. Plaintiffs have suffered damages in the form of back pay, front pay, emotional distress, loss of employment benefit package attendant to their position of employment, attorney's fees and costs, loss of usual activities, and loss of reputation.

65. As a result of the Defendants' actions and/or inactions, Plaintiffs suffered from mental anguish, loss of sleep, loss of appetite, headaches, and a loss of companionship, society and comfort, in an amount to be proven at trial, but which exceeds the minimum jurisdiction limits of the District Court.

WHEREFORE, Plaintiffs pray for relief and judgment as follows:

A. For damages in the form of lost wages and benefits and/or nominal relief, as allowed by law;

B. Injunctive and/or declaratory relief;

C. For reasonable attorneys' fees and costs; and

D. For such other further relief as the Court deems just and proper.

**PLAINTIFFS DEMAND A TRIAL BY JURY.**

DATED this 12th day of December, 2019.

OWENS, McCREA & LINSCOTT, PLLC

/s/ *April M. Linscott*
APRIL M. LINSCOTT, ISB#7036
Attorneys for Plaintiffs